**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JOSE E. ROSARIO-FABREGAS,<br>                    Appellant, | DOCKET NUMBER<br>NY-0752-13-0142-I-2 |
| v. | |
| DEPARTMENT OF THE ARMY,<br>                    Agency. | DATE: July 1, 2016 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jose E. Rosario-Fabregas, San Juan, Puerto Rico, pro se.

John F. Kasbar, Esquire, and Elizabeth Vavrica, Jacksonville, Florida, for
     the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review and the agency has filed a cross
petition for review of the initial decision, which mitigated the appellant's removal
to a 30-day suspension.  Generally, we grant petitions such as these only when:
the initial decision contains erroneous findings of material fact; the initial

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law.  Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions.  In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review. Therefore, we DENY the petition for review and the cross petition for review. Except as expressly MODIFIED by this Final Order to incorporate the standards set out in *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), for the appellant's affirmative defenses of discrimination, clarify the analysis of the Conduct Unbecoming charge, sustain certain specifications under the Inappropriate Use of Official Time and Inappropriate Use of Government Property charges that were not sustained by the administrative judge, and provide additional reasons for mitigating the penalty to a 30-day suspension, we AFFIRM the initial decision.

## BACKGROUND

¶2 The agency removed the appellant from his GS-12 Biologist (Project Manager) position with the U.S. Army Corps of Engineers (USACE) based on charges of (1) Conduct Unbecoming a Federal Employee (five specifications), (2) Insubordination (two specifications), (3) Inappropriate Use of Official Time (five specifications), and (4) Inappropriate Use of Government Property (five

specifications). Appeal File (I-2 AF), Tab 8, Part 3 at 101–11, Part 15 at 4, 6-11.[2] The charges relate to allegations that the appellant, while on official time and using a Government computer, edited letters drafted by other individuals that assisted private and public organizations with contrary interests to the USACE and other Federal agencies. I-2 AF, Tab 8, Part 3 at 101–06. The appellant asserted that he did not engage in the alleged misconduct and that the action was based on age, sex, and national origin discrimination, reprisal for whistleblowing, reprisal for other protected activity, and harmful error. I-2 AF, Tab 1 at 21 n.19, Tabs 45, 49.

¶3     Based on the written record, because the appellant did not request a hearing, the administrative judge found that the agency proved only one of the five specifications under the Conduct Unbecoming charge, did not prove the Insubordination charge, and proved only three of the five specifications under both the Inappropriate Use of Official Time and Inappropriate Use of Government Property charges. I-2 AF, Tab 72, Initial Decision (ID) at 2, 9–23. In making these findings, the administrative judge held that, although a different administrative judge in the first removal action had sustained all of the agency's charges, the Board's decision in *Lopes v. Department of the Navy*, 119 M.S.P.R. 106 (2012), which the agency cited in asserting that all of the charges should be sustained, was distinguishable from this case. ID at 4. The administrative judge found that she was not bound by the findings of the administrative judge in the prior Board appeal because different administrative judges were involved in the

---

[2] The agency previously had removed the appellant based on the same charges at issue in this case. Although a different administrative judge sustained the charges and affirmed the removal, the Board vacated that initial decision and reversed the removal action on due process grounds. *See Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-0752-10-0127-I-1, Final Order (Nov. 30, 2011).

cases and the agency had added a specification to the Insubordination charge in the second removal action that is the subject of this appeal. *Id.*

¶4    The administrative judge further found that the appellant did not prove his affirmative defenses. ID at 23–30. In this regard, the administrative judge found that the agency had legitimate reasons for taking its action against the appellant, the appellant did not show, as part of his discrimination claims, that his employment situation was nearly identical to the employment situations of comparison employees who worked for different supervisors in different offices, the appellant did not show that the acting officials knew of his whistleblowing disclosures, more than 4 and 3 years, respectively, had elapsed between the appellant's disclosures and the second notice of proposed removal, and the appellant did not prove that the action was taken because of his protected activities. ID at 23–29. The administrative judge also found that the appellant did not prove harmful error. ID at 29–30. Finally, the administrative judge found that the agency met its burden of proof as to nexus, but mitigated the penalty to a 30-day suspension based upon the appellant's 24 years of service with the agency with no disciplinary record, satisfactory performance, and receipt of numerous awards. ID at 30–31. The administrative judge ordered the agency to provide interim relief if either party filed a petition for review. ID at 33.

## DISCUSSION OF ARGUMENTS ON REVIEW

Interim Relief

¶5    In its cross petition for review, the agency submits a certification that it has provided the appellant with the required interim relief. Petition for Review (PFR) File, Tab 4 at 26–27. The declaration from the Division Chief of the Regulatory Division at the USACE's Jacksonville District avers that the agency provided the appellant with an interim appointment to a GS-0401-12 Biologist position, effective the date of the initial decision, and that the appellant would remain in a paid, nonduty status pending a final Board decision because his return to his

position or presence in the workplace would be an undue disruption. *Id.* at 27-28. The agency also submits a letter it sent to the appellant informing him of the agency's actions and a Standard Form 50 documenting the interim appointment. *Id.* at 29–31. In his response, the appellant asserts that the agency has not complied with the interim relief order because the agency has not enrolled him in a health insurance benefits plan. PFR File, Tab 6 at 4–5.[3]

¶6          In accordance with 5 C.F.R. § 1201.116(b), the Clerk of the Board ordered the agency to file evidence and argument addressing the appellant's assertion that the agency had not complied with the interim relief order. PFR File, Tab 9. In its response, the agency has submitted a declaration from a Human Resources Director stating that the appellant's health insurance election had to be manually processed because the appellant had been placed on administrative leave and did not have access to a Government computer, and that an approximately 3-week delay in receipt of a retroactively effective insurance certificate from the appellant's insurance carrier was due to an inadvertent mistake by an employee in the agency's Civilian Human Resources Office, who coded the election into the system to begin health insurance deductions from the appellant's pay but did not also fax an election form to the insurance carrier. PFR File, Tab 13 at 9–10, 29. The agency submitted a copy of the appellant's health insurance certificate. *Id.* at 28. The appellant has filed a response asserting that the agency did not timely comply with its interim relief obligation relating to health insurance benefits. PFR File, Tab 14 at 4, 8. He does not contest the agency's evidence showing that he is now receiving health insurance benefits. *Id.*

---

[3] The appellant also asserts that the agency acted in bad faith in making a determination that returning him to the workplace during the interim relief period would be unduly disruptive to the work environment. PFR File, Tab 6 at 6–7. The Board's authority, however, is restricted to deciding whether an undue disruption determination was made when required and whether the appellant is receiving appropriate pay and benefits. *King v. Jerome*, 42 F.3d 1371, 1374-75 (Fed. Cir. 1994); *Patterson v. Department of the Air Force*, 77 M.S.P.R. 557, 561, *aff'd*, 168 F.3d 1322 (Fed. Cir. 1998) (Table).

¶7        When an agency that is subject to an interim relief order chooses not to return an employee to the place of employment, it must ensure that the employee receives pay, compensation, and all other benefits as terms and conditions of employment pending the outcome of any petition for review.  *Franklin v. Department of Justice*, 71 M.S.P.R. 583, 588 (1996).  Reasonable, inadvertent delays in issuing pay due under an interim relief order do not show noncompliance with the order.  *Id.* at 590.  The same principle applies here, where the agency has shown a reasonable, inadvertent delay in providing health insurance benefits.  *See Fox v. Federal Deposit Insurance Corporation*, 62 M.S.P.R. 447, 452 (1994) (finding that a delay in reinstating the appellant's health insurance benefits did not warrant dismissal of the agency's petition for review for failure to comply with an interim relief order).  Thus, we find no basis to dismiss the agency's cross petition for review.  *See* 5 C.F.R. § 1201.116(e).

The Appellant's Petition for Review

¶8        The appellant challenges the administrative judge's findings regarding his claims of reprisal for whistleblowing, conducting a retaliatory investigation, and discrimination, but does not challenge the mitigation of the penalty, which he asserts is "equitable."  PFR File, Tab 1 at 4–5.[4]  The appellant contends that,

---

[4] The agency asserts that the appellant's affirmative defenses are barred by the doctrine of res judicata because he did not assert such defenses in his appeal of the first removal action.  PFR File, Tab 3 at 4-5; I-2 AF, Tab 62 at 16–18.  This argument is without merit.  Res judicata precludes parties from relitigating issues that were, or could have been, raised in the prior action, and applies when (1) the prior decision was rendered by a forum with competent jurisdiction, (2) the prior decision was a final decision on the merits, and (3) the same cause of action and the same parties or their privies were involved in both cases.  *Zgonc v. Department of Defense*, 103 M.S.P.R. 666, ¶ 8 (2006), *aff'd*, 230 F. App'x 967 (Fed. Cir. 2007).  The second removal action is a different cause of action from the first removal action because it involved a separate removal and thus a different set of facts that gave the appellant a right to seek relief by an appeal to the Board.  *See Frias v. U.S. Postal Service*, 63 M.S.P.R. 276, 280 (finding that, for res judicata purposes, a cause of action is the set of facts that gives an appellant the right to seek relief from an agency), *aff'd*, 43 F.3d 1486 (Fed. Cir. 1994) (Table); *cf. O'Leary v. Office of Personnel Management*, 90 M.S.P.R. 124, ¶¶ 6–8 (2001) (finding that separate

although the administrative judge found that he did not prove that his disclosures were a contributing factor in his removal, the Board held in a separate individual right of action (IRA) appeal in *Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-1221-11-0253-W-2, Final Order (Dec. 30, 2011), that he made a nonfrivolous allegation that his disclosures were a contributing factor in his placement on administrative leave pending the agency's first removal action, and remanded that case for further adjudication. *Id.* at 5–7. The appellant also asserts that the proposing and deciding officials knew about his disclosures because the appellant's immediate supervisor informed those officials about the "permitting and enforcement actions executed in Puerto Rico," the disclosures were part of the documented information included in an investigation, and it could be expected that his first-level supervisor would inform the acting officials about the appellant's "argued positions." *Id.* at 7–9. The appellant further contends that the passage of time between the Board's reversal of the first removal action and the agency's action removing him a second time cannot be factored into the knowledge-timing test. *Id.* at 8–9.

¶9  Although the Board found in the appellant's IRA appeal that he made a nonfrivolous allegation that his disclosures were a contributing factor in his placement on administrative leave, that finding was set forth in a nonprecedential Remand Order that specifically stated that the Board was not required to follow it in future decisions. *See Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-1221-11-0253-W-2, Remand Order (Dec. 30, 2013). Moreover, the finding in the IRA appeal did not include a discussion of whether the acting officials knew of the disclosures. *Id.* at 7. In any event, a nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s); *see DiGiorgio v. Department of the Navy*, 84 M.S.P.R. 6, ¶ 6 (1999). The mere fact that the appellant may have made a nonfrivolous allegation in his

Board appeals of administrative law judge examinations taken in 1995 and 1997 involved different causes of action).

IRA appeal that his disclosures were a contributing factor in his placement on administrative leave does not require a finding that the contributing factor element has been proven by preponderant evidence in this removal appeal. *See Smart v. Department of the Army*, 98 M.S.P.R. 566, ¶¶ 9-13 (finding that, although the appellant made a nonfrivolous allegation of a protected disclosure, he did not prove by preponderant evidence that his disclosure was protected), *aff'd*, 157 F. App'x 260 (Fed. Cir. 2005).

¶10      The administrative judge found that the appellant reasonably believed that he made two protected disclosures relating to the agency's alleged failure to take action in a matter in violation of the Clean Water Act. ID at 26, 28. She found, however, that there was no evidence indicating that the proposing or deciding official knew of the appellant's disclosures, and that more than 4 and 3 years had elapsed, respectively, between those disclosures and the November 15, 2012 issuance of the proposal notice in this case. ID at 3, 28. The appellant asserted that he made the following disclosures relating to an alleged violation by the agency of the Clean Water Act: a November 13, 2008 disclosure to an agency attorney; a November 13, 2008 disclosure to a private citizen; and a September 12, 2009 disclosure to his immediate supervisor. Initial Appeal File, Tab 1 at 12–13, 15–16. The appellant's assertions on review that the proposing and deciding officials knew or should have known about the "permitting and enforcement actions" and the appellant's "argued positions" does not establish by preponderant evidence that those officials knew of the disclosures at issue in this case. Moreover, despite the appellant's contention that his disclosures were included in an investigation that would have been reviewed by the proposing and deciding officials, the report of investigation into the wrongdoing at issue in this case, which related to a potential conflict of interest by the appellant, does not include any mention of his disclosures. I-2 AF, Tab 8, Part 12 at 16–22. Because the appellant has not met the knowledge portion of the knowledge-timing test, we need not address his claims regarding the timing of the action.

¶11     The appellant also contends that the administrative judge did not address his claim that the agency conducted a retaliatory investigation and that he is entitled to damages for a retaliatory investigation under the Whistleblower Protection Enhancement Act of 2012.  PFR File, Tab 1 at 10–11.  An investigation is not a personnel action per se, but the Board will consider evidence of the conduct of an agency investigation when it is so closely related to a personnel action that it could have been pretext for gathering evidence to use to retaliate against an employee.  *Kitlinski v. Department of Justice*, 123 M.S.P.R. 41, ¶ 27 (2015).  Given the appellant's failure to show that the proposing and deciding officials, or any official who ordered the investigation into his potential conflict of interest, knew of his disclosures, we find that he has not shown that the investigation could have been a pretext for gathering evidence to retaliate against him.  In any event, under 5 U.S.C. § 1221(g)(4), any corrective action ordered to correct a prohibited personnel practice may include fees, costs, or damages reasonably incurred due to an agency investigation of the employee, if such investigation was commenced, expanded, or extended in retaliation for the disclosure or protected activity that formed the basis of the corrective action.  Here, the Board has not ordered corrective action to correct a prohibited personnel practice.  Thus, the appellant is not entitled to damages under section 1221(g)(4).

¶12     Regarding his claim of discrimination, the appellant asserts that the administrative judge's finding that comparator employees needed to have the same supervisor and work in the same office was "too restrictive."  PFR File, Tab 1 at 18–19.  However, the Board has held that, for employees to be deemed similarly situated for purposes of an affirmative defense of discrimination based on disparate treatment, all relevant aspects of their employment situations must be nearly identical.  *See Hooper v. Department of the Interior*, 120 M.S.P.R. 658, ¶ 6 (2014).  Therefore, comparison employees must have reported to the same supervisor, been subjected to the same standards governing discipline, and have engaged in conduct similar to the appellant's without differentiating or mitigating

circumstances. *Id.* Here, therefore, the appellant has shown no error in the administrative judge's finding that the appellant was not similarly situated to the comparison employees at issue because none of the comparison employees were supervised by the appellant's supervisor. ID at 26.[5]

The Agency's Cross Petition for Review

¶13 In its cross petition for review, the agency asserts that "the fact that the two judges reached different conclusions from virtually the same record alone demonstrates that the Agency's decision to remove the Appellant should be granted deference and sustained." PFR File, Tab 4 at 5, 11. The agency contends that the administrative judge should have adopted the factual findings of the administrative judge in the appeal of the first removal action. *Id.* at 6.

¶14 The Board will sustain an agency's action if, among other things, the agency proves its charges by preponderant evidence. *See Jordan v. Department of the Treasury*, 102 M.S.P.R. 390, ¶ 7 (2006). The mere fact that two Board administrative judges reached different conclusions in separate appeals does not, therefore, require the Board to defer to the agency's decision or sustain the action. To the extent that the agency relies upon *Lopes*, 119 M.S.P.R. 106, to support its argument that the findings regarding the charges in the first removal action should be adopted in this case, we agree with the administrative judge that *Lopes* does not support such a determination. *See* ID at 4. Here, as in *Lopes*, 119 M.S.P.R. 106, ¶ 8 n.4, the concepts of claim preclusion and issue preclusion do not apply because the Board's November 30, 2011 decision vacating the first initial decision and reversing the first removal action did not address the agency's charges and did not constitute a final decision on the merits of the charges.

---

[5] After the initial decision was issued, the Board issued a decision that clarified the evidentiary standards and burdens of proof under which the Board analyzes these claims. *Savage*, 122 M.S.P.R. 612, ¶¶ 42–43, 51. We find that applying the analytical framework in *Savage* would not change the result in this case. Thus, based on the existing record, and for the reasons contained in the initial decision, we affirm the administrative judge's finding that the appellant did not meet his burden of proving these claims.

*Rosario-Fabregas v. Department of the Army*, MSPB Docket No. NY-0752-10-0127-I-1, Final Order at 2-5 (Nov. 30, 2011). Thus, the administrative judge could not rely on the prior initial decision for her findings in this case. *See Lopes*, 119 M.S.P.R. 106, ¶ 8.

*The Conduct Unbecoming charge is sustained*

¶15    The agency charged the appellant with "Conduct Unbecoming a Federal Employee." I-2 AF, Tab 8, Part 2 at 102. The agency asserted that its mission is to impartially and fairly implement applicable laws and regulations; it is essential that the public have faith in its unbiased regulatory process and trust in the integrity of its project managers; the appellant practiced unethical behavior and demonstrated a serious lack of judgment by repeatedly abetting private and public organizations with contrary interests to the USACE and other Federal agencies; and his willingness to introduce his professional knowledge and experience into private correspondence of a controversial nature caused the agency to question his alliance to the Federal Government. *Id.*

¶16    A charge of "conduct unbecoming," much like a charge of "improper conduct," has no specific element of proof; it is established by proving that the employee committed the acts alleged in support of the broad label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). An agency is not required to affix a label to a charge of misconduct and may simply describe actions that constitute misbehavior in narrative form and have its discipline sustained if the efficiency of the service suffers because of the misconduct. *Id*. Moreover, a charge must be viewed in light of the accompanying specifications and should not be technically construed. *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202 (1997). In determining how charges are to be construed, the Board will examine the structure and language of the proposal notice. *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 12 (2001).

¶17    Here, the administrative judge noted that the agency's table of penalties described the offense of Conduct Unbecoming as (a) immoral, indecent, or

disgraceful conduct, or (b) solicitation of or accepting anything of monetary value from a person who is seeking contracts or other business or financial gain. ID at 9; *see* I-2 AF, Tab 8, Part 13 at 40. She therefore found that the agency did not prove four of the five specifications under this charge because it did not show that the appellant's misconduct was immoral, indecent, or disgraceful. ID at 11-14. There is, however, no indication in the proposal or decision notices that the agency was charging the appellant with immoral, indecent, or disgraceful conduct. *See* I-2 AF, Tab 8, Part 2 at 102-06, Part 15 at 6-8. Moreover, the table of penalties is a list of infractions committed "most frequently" by agency employees, not a comprehensive list of all such infractions. I-2 AF, Tab 8, Part 13 at 34. We therefore find that the administrative judge should not have incorporated into the Conduct Unbecoming charge a requirement that the agency show that the appellant's conduct was immoral, indecent, or disgraceful. The Board is required to review the agency's decision solely on the grounds invoked by the agency; the Board may not substitute what it considers to be a more adequate or proper basis. *Gottlieb v. Veterans Administration*, 39 M.S.P.R. 606, 609 (1989). Thus, the Conduct Unbecoming charge must be reviewed by the Board in light of the underlying specifications without any requirement that the agency show immoral, indecent, or disgraceful conduct.

¶18 Under the first specification, the agency asserted that the appellant, while serving in his official capacity as a project manager, provided significant edits to "Contestacion Carta NOAA (V5) Revised.doc," which "helped to support a local public agency position against a Federal agency." I-2 AF, Tab 8, Part 2 at 102. The agency charged that the paper's author was E.R. of the Puerto Rico Department of Natural Resources; the intended recipient was the National Oceanic and Atmospheric Administration (NOAA); the appellant had no reason to assist in the preparation of the letter; and the action was outside the appellant's official duties. *Id.* The administrative judge did not sustain this specification, finding that there was nothing in the letter that was offensive or would cause one

to question the appellant's allegiance to the Government, the appellant edited the document at the request of a coworker, and the appellant's actions did not constitute immoral, indecent, or disgraceful conduct. ID at 11.

¶19    The agency asserts on review that the administrative judge in the first removal action relied on credibility determinations to resolve conflicting testimony regarding the edits the appellant made to this letter and found that the edits were not a part of the appellant's official duties, could have been perceived as a conflict of interest, and were contrary to a requirement that he remain impartial. PFR File, Tab 4 at 12–13. The agency contends that the hearing transcript and initial decision from the first removal action were part of the record in this case; yet the administrative judge did not consider them when she found that the agency did not rebut statements from the appellant and his two witnesses regarding this specification. *Id.* at 13. The agency further asserts that it did not need to rebut the statements the appellant presented from those two individuals because one was a coworker who worked in the Planning Division and lacked an understanding of the responsibilities of the Regulatory Division, where the appellant worked, and the other was a private sector attorney who did not work for the agency. *Id.* at 13–14, 17.

¶20    We find that the letter includes significant edits by the appellant, including stylistic edits, edits inserting technical terms such as "insular platform edge" and coral reef "assemblages," the addition of several cays to a list of the largest cays in the area, a statement that the present design of certain boat launching facilities is "unsafe and very dilapidated," and a recommendation that the author of the letter omit from the proposed project a request for one of the two boat ramps discussed in the document. I-2 AF, Tab 8, Part 3 at 121–24, Part 23 at 7. We further find, however, that the edits the appellant made were sent only to another employee of the USACE who had requested the appellant's assistance, and that "a reply to NOAA's comments was never completed." I-2 AF, Tab 8, Part 23 at 7. Under these circumstances, in which the edits were made in response to a request

by a coworker, the edits were only provided to the coworker, and the letter was never sent to NOAA, we find that the agency did not establish by preponderant evidence that the appellant actually abetted a public organization with contrary interests to NOAA. Thus, this specification is not sustained.

¶21     Under the second specification, the agency asserted that the appellant, while serving in his official capacity as a project manager, provided significant edits to "Ovidio Letter COE.doc," which was intended for a private attorney requesting information from the agency through the Freedom of Information Act (FOIA). I-2 AF, Tab 8, Part 2 at 102. The agency charged that the letter was addressed to the appellant's supervisor; the appellant's input clearly fostered the attorney's position, "including intent, specific details, and supporting justification for the request"; and the appellant's inappropriate assistance was outside his official duties. *Id.* The administrative judge did not sustain this specification, finding that the appellant's actions did not constitute immoral, indecent, or disgraceful conduct and would not cause anyone to question his allegiance to the Government. ID at 12.

¶22     The agency asserts that the administrative judge improperly relied upon testimony by the appellant from the hearing in the first removal appeal that the prior administrative judge found not credible, did not explain why she gave greater weight to the appellant's testimony than to the testimony of the deciding official, and incorrectly relied upon unsworn emails from the private attorney, who stated that he believed the appellant did not act unethically because other project managers had helped him in the same way, given that misconduct by others would not justify the appellant's misconduct. PFR File, Tab 4 at 15.

¶23     We find that the letter includes significant edits by the appellant, including stylistic edits, an edit that inserted the term "Freedom of Information Act" in the "reference" section, and references to findings in a hydrologic and hydraulic study prepared for a project and to a certification by an environmental quality board. I-2 AF, Tab 8, Part 3 at 138–43. We further find, however, that the

agency has not shown by preponderant evidence that the edits the appellant made abetted a private organization with "contrary interests to" the USACE. In this regard, the agency has not explained how the private attorney's interests, as expressed in the FOIA request, were "contrary" to the interests of the USACE. Testimony from the deciding official does not include any explanation as to the nature of the private interests that were allegedly contrary to the interests of the USACE. I-2 AF, Tab 8, Part 19 at 55–57, 122–25. The basic goal of FOIA is to open Federal agency action to the light of public scrutiny. *See Department of the Air Force v. Rose*, 425 U.S. 352, 372 (1976). Here, the agency's interest in promoting this statutory goal within the legal parameters of FOIA may have been entirely consistent with the request submitted by the private attorney. Moreover, the agency did not charge the appellant with creating the appearance of preferential treatment or a conflict of interest. *See Fontes v. Department of Transportation*, 51 M.S.P.R. 655, 663 (1991) (holding that an agency must establish, to prove a conflict of interest, that the nature of the interests or duties in one capacity had a "direct and predictable effect" on the interests or duties in the other capacity). Accordingly, we find that the agency has not proven this specification by preponderant evidence.

¶24    Under the third specification, the agency asserted that the appellant, while serving in his official capacity as a project manager, provided significant edits to a document entitled, "Gaston.doc," which helped support a local public agency position against the Federal Highway Administration (FHA). I-2 AF, Tab 8, Part 2 at 103. The agency charged that the appellant's actions were outside his official duties. *Id.* The administrative judge did not sustain this specification upon finding that, although the editing of the letter was not within the appellant's duties, it would not cause anyone to question his allegiance to the Government, nor would it constitute indecent, immoral, or disgraceful conduct. ID at 13.

¶25    The agency contends that the administrative judge ignored testimony of the deciding official and accepted at face value statements by the appellant that the

prior administrative judge found not credible and unsworn statements by a private individual who had a conflict of interest and no familiarity with the agency's regulatory program. PFR File, Tab 4 at 16. The agency further asserts that the edited letter was provided to the appellant's supervisor and another agency official as courtesy copies and that the appellant's actions were not within his official duties and undermined the agency's impartiality. *Id.* at 16–17.

¶26        The letter in question is from a realtor, relates to a proposed bicycle and pedestrian trail, and includes significant edits by the appellant, including stylistic edits, an edit that emphasized that the matter at issue directly concerned an agency that the FHA represented, an edit noting that data regarding endangered sea turtle nesting sites was available from the Puerto Rico Department of Natural and Environmental Resources, and an edit demanding strict compliance with Federal requirements to assure that funds were being used correctly. I-2 AF, Tab 8, Part 3 at 147. We further find, however, that the agency has not shown by preponderant evidence that the edits the appellant made abetted an individual with a contrary interest to the FHA. As the administrative judge found, contrary to the agency's assertion that the letter helped support a local public agency position against a Federal agency, the letter in fact requested that the FHA investigate and ensure compliance by those local public agencies with certain Federal laws and regulations, and suggested that the Puerto Rican agencies were not complying with the FHA's requirements. ID at 13. The realtor explained that he thought Federal funds were being used incorrectly and asked the appellant to help him "defend federal money and federal regulations and the law." I-2 AF, Tab 8, Part 22 at 42–43. The agency has not explained how the realtor's interests, as expressed in the letter, were "contrary" to the interests of the FHA. The testimony of the deciding official, for example, does not identify any interests he believed were contrary to the interests of the FHA. I-2 AF, Tab 8, Part 19 at 57–60. We note in this regard that Congress has indicated that whistleblowers serve the public interest by assisting in the elimination of fraud,

waste, abuse, corruption, and unnecessary Government expenditures. *See Knollenberg v. Merit Systems Protection Board*, 953 F.2d 623, 625 (Fed. Cir. 1992). Accordingly, we find that the agency has not proven this specification by preponderant evidence.

¶27 Under the fourth specification, the agency asserted that the appellant, while serving in his official capacity as a project manager, provided significant edits to a document entitled, "Carta COE Combate (2).doc," which was intended for a private party lawyer "to request additional information from the Army Corps of Engineers on a particular permit." I-2 AF, Tab 8, Part 2 at 103. The agency charged that the letter was addressed to the appellant's supervisor, the appellant's input clearly aided the private attorney by providing details and other supporting justification for the request, and the appellant acted outside his official duties. *Id.* The administrative judge did not sustain this specification upon finding that, although the appellant's supervisor did not assign him this task, his editing of the letter would not cause anyone to question his allegiance to the Federal Government and was not indecent, immoral, or disgraceful conduct. ID at 14.

¶28 The agency asserts that the administrative judge improperly did not sustain this specification because she erred in her interpretation of an agency regulation. PFR File, Tab 4 at 17. In this regard, the agency contends that, although the administrative judge correctly noted that the letter the appellant edited was a response to an agency request for additional information, she erroneously equated the appellant's unauthorized editing of the response with permissibly assisting an applicant in completing an application. *Id.* at 17–18. The agency asserts that the appellant was not permitted to assist a private sector attorney with his response to the agency's request for additional information, which takes place after a permit application is filed, because "that information informs the Agency's permit decision," and the agency "must evaluate an applicant's information independently and render its permit decision impartially." *Id.* at 18.

¶29    We find that the letter, which responds to a letter from the appellant's supervisor requesting additional information relating to a permit for improvements to a boat ramp, includes significant edits by the appellant, including many stylistic edits, an edit indicating that the "rip-rap" material is "appropriate selected material," an edit noting that the size of the rocks involved will be measured by their diameter, and a comment requesting the private attorney to specify the type of material used to create a temporary "coffer" dam. I-2 AF, Tab 8, Part 3 at 163–64. The administrative judge correctly found that, contrary to the agency's assertion that the letter requested information from the USACE, the letter in fact responded to a request for information from the USACE. ID at 14. In fact, the deciding official incorrectly testified at the hearing in the first removal appeal that the letter requested information on a Department of the Army permit. I-2 AF, Tab 8, Part 19 at 60. Although the deciding official testified that altering the document was not a part of the appellant's official duties, *id.* at 60–61, 127–28, he did not explain how the interests of the individual in responding to the request for information from the USACE were contrary to the interests of the agency. Thus, we find that the agency has not shown by preponderant evidence that the edits the appellant made abetted an individual with a contrary interest to the USACE. Accordingly, we find that the agency has not proven this specification by preponderant evidence.

¶30    The appellant does not contest the administrative judge's determination to sustain the fifth specification under this charge. We therefore find that the agency has proven this charge. *See Burroughs v. Department of the Army,* 918 F.2d 170, 172 (Fed. Cir. 1990) (finding that, when more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

*The Insubordination Charge is not sustained*

¶31    Under the first specification of this charge, the agency asserted that the appellant openly asserted a contrary position in the "Rio Mar" matter to the

agency's original determination that no permit was required for the developer. I-2 AF, Tab 8, Part 2 at 104. The agency noted that, based on information the appellant provided, his supervisor overturned the original determination that no permit was required, and, after an appeal by the affected party, the proposing official, who was the appellant's second-level supervisor, found no reason to believe that the original determination was in error and directed the appellant and his supervisor to reinstate the original determination. *Id.* The agency asserted that, even after this action was taken, "you still maintained your original position" and were "openly antagonistic and disregarded the decision-making authority of your chain of command." *Id.* The agency contended that the appellant subverted his chain of command and the agency's position "when you chose to side with a third party interest in this controversial case." *Id.*

¶32    The administrative judge found that the agency did not prove this specification because the appellant was not informed by his supervisor when he assigned the appellant to this matter that a "No Permit Required" letter had been issued. ID at 17–18. The administrative judge found that, after the appellant inspected the property in question and observed excavation work, he found violations and informed his supervisor, who issued a cease and desist order. ID at 7, 18. The administrative judge further found that the appellant complied with the proposing official's order to reinstate the "No Permit Required" letter, despite the appellant's opinion to the contrary, and that any delay in the reinstatement of that letter with respect to one of the four parcels at issue was due to a restoration plan for that parcel that was agreed to by the developer of the property. ID at 18. On review, the agency contends that the administrative judge did not address material evidence identified by the administrative judge in the first removal action, who sustained this charge. PFR File, Tab 4 at 19–21. The agency also asserts that the administrative judge did not address the appellant's antagonism and his "openly siding with a party outside of the agency despite the requirement of impartiality in his position." *Id.* at 21.

¶33    Insubordination is the willful and intentional refusal to obey an authorized order of a superior officer, which the officer is entitled to have obeyed. *Southerland v. Department of Defense*, 117 M.S.P.R. 56, ¶ 15 (2011), *aff'd as modified on other grounds*, 119 M.S.P.R. 566 (2013).  Part of the agency's burden is to establish that the appellant's refusal to obey any such order was intentional and willful disobedience.  *Id.*  Thus, if an employee attempted to comply with an order, he was not insubordinate.  *Id.*

¶34    The agency has shown no error in the administrative judge's determination that the agency did not prove this specification because the appellant complied with the agency's order to reinstate the "No Permit Required" determination.  The record includes a February 26, 2009 email from the appellant to the proposing official informing him that, in accordance with the proposing official's instructions, the appellant had attached a letter reinstating the "No Permit Required" status for the parcels in question for the Rio Mar project.  I-2 AF, Tab 8, Part 4 at 66.  The appellant testified that he complied with the order within a matter of days.  I-2 AF, Tab 8, Part 5 at 111–12.  The deciding official testified that he had no personal knowledge showing that the appellant did not comply with the January 2009 order and that he determined that the appellant did not comply with the order based merely on the statement in the proposal notice from the proposing official.  *Id*. at 33–34.  The proposing official did not testify at the hearing.  I-2 AF, Tab 8, Part 4 at 101.  The evidence identified by the agency on review, even assuming that it is credible, merely shows that the appellant may have openly disagreed with the agency's determination after he had complied with the agency's order.  It does not demonstrate that the agency issued any subsequent order that he refused to obey.  *See Hanna v. Department of Labor*, 80 M.S.P.R. 294, ¶ 8 (1998) (finding that the agency did not prove insubordination when it did not prove that it issued an actual order), *aff'd*, 18 F. App'x 787 (Fed. Cir. 2001).  The appellant's position description indicates that one of his major duties involved the preparation of jurisdictional

determinations in complex situations where "these limits are unclear and/or controversial." I-2 AF, Tab 8, Part 2 at 97. The fact that the appellant may have disagreed with his supervisors on a complex jurisdictional determination that was unclear or controversial does not, on its own, show that any continued disagreement by itself constituted insubordination. As set forth above, the Board may review the agency's decision solely on the grounds invoked by the agency and may not substitute what it may consider to be a more adequate or proper basis. *Gottlieb*, 39 M.S.P.R. at 609. Thus, we agree with the administrative judge that the agency did not prove this specification.

¶35    The agency's second specification indicates that the proposing official reviewed the memoranda and timelines that were received and considered by the deciding official in the first removal action and found that they confirmed that the appellant's views, opinions, and actions with respect to the Rio Mar matter were without merit. I-2 AF, Tab 8, Part 2 at 104. The agency asserted that, although the appellant's immediate supervisor was persuaded by the appellant's views for a limited period of time, the immediate supervisor ultimately complied with the reinstatement of the agency's original position, was never openly antagonistic to the USACE's official position, and did not continue to openly advance a contrary position on behalf of outside parties once the official position was reinstated. *Id.*

¶36    The administrative judge did not sustain this specification, finding that the appellant's recommendations regarding Rio Mar were based on his inspection of the property and information he received from interested parties and other agencies. ID at 18. She held that the fact that the appellant's opinion differed from the opinion of the proposing official did not mean that the appellant was insubordinate. ID at 18–19. The agency contends on review that the appellant was openly antagonistic to the agency's official position and advanced a contrary position on behalf of outside parties. PFR File, Tab 4 at 22. The agency has not, however, shown any error in the administrative judge's determination not to sustain this specification. As set forth above with respect to the first

specification of this charge, the agency did not prove by preponderant evidence that the agency issued an order that the appellant failed to obey.

*The Inappropriate Use of Official Time and Inappropriate Use of Government Property charges are sustained*

¶37 The agency set forth five specifications under each of these charges corresponding to the appellant's actions editing the letters underlying the five specifications of the Conduct Unbecoming charge. I-2 AF, Tab 8, Part 2 at 105-06. In particular, the agency asserted that the appellant certified on his time and attendance record that he was on official time when he made the edits in question, used his Government computer to edit the documents, and stored the documents on the computer's hard drive and/or the Local Area Network. *Id*.

¶38 The administrative judge sustained three of the five specifications under the Inappropriate Use of Official Time charge, and three of the five specifications under the Inappropriate Use of Government Property charge. ID at 19–23. She found that the agency did not prove the first specification of each of these charges because the appellant had been asked to edit the document in question by a coworker, and staff members of the Planning and Regulatory Sections consulted with one another and collaborated on various matters. ID at 19, 21–22. The administrative judge also found that the agency did not prove the fourth specification of each of these charges because the letter the appellant edited involved a response of the Puerto Rico Department of Natural and Environmental Resources to the USACE for information that the USACE had requested on a permit application, and because Regulatory Section project managers are permitted to provide assistance to applicants for permits. ID at 20–21.

¶39 The agency asserts on review that the administrative judge erred when she did not sustain the first and fourth specifications of these charges because she incorrectly found that the appellant's editing of the documents in question was consistent with his official duties. PFR File, Tab 4 at 22–23. We agree.

¶40     Even assuming that the appellant's coworker had asked him, in connection with the first specification of these charges, to "take a quick look at [a] response letter and provide an honest opinion," under a Planning Assistance to States Program, I-2 AF, Tab 8, Part 8 at 3–4, there is no indication that any request for assistance from the coworker included the editing of emails for outside organizations.  There is also no indication, based on the appellant's position description, that such editing was a part of his official duties, even if it were shown that such editing was commonplace in the Regulatory Section.  I-2 AF, Tab 8, Part 1 at 96–103.  Moreover, the deciding official testified that employees may only use official time to perform official duties, such as work that has been assigned, projects that the employee is supposed to review, telephone calls regarding work-related projects, meetings pertaining to work, and responses to emails regarding projects and work-related issues.  I-2 AF, Tab 8, Part 5 at 80-83.  Under these circumstances, we find that the agency has proven by preponderant evidence all five of the specifications under these charges, which are sustained.

*The penalty of removal is mitigated to a 30-day suspension*

¶41     The administrative judge mitigated the penalty of removal to a 30-day suspension upon finding that the appellant had more than 24 years of service with no disciplinary record, satisfactory performance ratings, and numerous awards.  ID at 30–31.  The administrative judge also found that the deciding official did not consider a number of important matters, including evidence indicating that other project managers had provided the same type of assistance to outside parties that the appellant provided, the appellant's ethics training did not specifically deal with document review like that at issue in this case, and the lack of embarrassment to the agency from the appellant's editing of the letters.  ID at 31.

¶42     The agency contends that the Board should sustain the penalty of removal because all of the charges and specifications should be sustained and the appellant exhibited no potential for rehabilitation.  PFR File, Tab 4 at 23, 25.  The agency also asserts that the administrative judge did not identify any

evidence in the record showing that other employees provided help to outside parties, improperly found that the appellant's ethics training did not deal with document review because it did cover conflicts of interest, and incorrectly found that there was no embarrassment to the agency due to the appellant's editing of the letters. *Id.* at 24–25. In this regard, the agency contends that "[t]he impact of the Appellant's misconduct on the reputation of the Agency is clearly implied in this case, since he edited letters for parties *outside* of the Agency." *Id.* at 25.

¶43  As set forth above, not all of the charges and specifications have been sustained. An agency's failure to sustain all of its supporting specifications may require, or contribute to, a finding that the agency's penalty is not reasonable. *Gaudin v. Department of the Treasury*, 109 M.S.P.R. 301, ¶ 9 (2008). Similarly, when not all of the charges are sustained, the Board will consider carefully whether the sustained charges merit the penalty imposed by the agency. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 308 (1981). When the Board sustains fewer than all of the agency's charges, the Board may mitigate the agency's penalty to the maximum reasonable penalty so long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999). Here, we have found no indication that the agency would like the Board to impose a lesser penalty if fewer charges are sustained. I-2 AF, Tab 8, Part 4 at 107–73, Part 5 at 3–82, Part 15 at 6–11.

¶44  The seriousness of the appellant's offense is always one of the most important factors considered by the Board in assessing the reasonableness of the agency's penalty determination. *Rosenberg v. Department of Transportation*, 105 M.S.P.R. 130, ¶ 30 (2007). We find that the most serious charge in this case, Insubordination, has not been sustained. *See Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 27 (2013) (finding that insubordination is a serious charge); *Murry v. General Services Administration*, 93 M.S.P.R. 554, ¶ 8 (2003) (finding that insubordination is a serious charge warranting removal); *cf.*

*Rosenberg*, [105 M.S.P.R. 130](#), ¶ 30 (mitigating the penalty when, among other things, a more serious charge was not sustained). Furthermore, only one of the five specifications of the Conduct Unbecoming charge has been sustained.

¶45    We agree with the agency that the administrative judge did not identify the evidence she relied on in the record to find that other employees provided help to outside parties in a manner similar to that of the appellant. Moreover, even if she had identified such evidence, there is no indication that the agency was aware of and condoned such behavior. *See Herrera-Martinez v. Social Security Administration*, [84 M.S.P.R. 426](#), 433, ¶ 16 (1999) (finding that, although condonation may be a mitigating factor, the Board has not always found that condonation warrants mitigation). Thus, we disagree with the administrative judge's determination that this is a mitigating factor. Nevertheless, we agree with the administrative judge's finding that, although the appellant received ethics training covering conflicts of interest, the training addressed conflicts of interest in general without addressing the particular type of activity engaged in by the appellant in this case. I-2 AF, Tab 8, Part 7 at 66, Part 21 at 58–60, 73. The record reflects that the editing of such documents by agency employees was commonplace and permitted in connection with the drafting of permit applications, if not in the enforcement process. I-2 AF, Tab 8, Part 5 at 84–85, 91–93, Part 8 at 12–13, Part 23 at 14.

¶46    In addition, the agency has not identified any evidence showing that the actions at issue in this case were notorious. The deciding official testified that the appellant's actions "could have" brought notoriety upon the agency if the public had known about the letters that the appellant edited. I-2 AF, Tab 8, Part 4 at 119, 159, Part 5 at 4. To the extent that individuals outside the agency were aware of the appellant's actions, they viewed the actions as positively impacting the agency's reputation. *See, e.g.*, I-2 AF, Tab 8, Part 23 at 5, 15–16, 27, 30.

¶47    Although the agency contends that the appellant lacks potential for rehabilitation, PFR File, Tab 4 at 25, the appellant indicated in his response to the

agency's first action proposing his removal, "I give my word of honor as a man that I would not correct any other letter for anybody else and that I would not argue about regulatory processes with my fellow staff, and I would avoid any type of conflict, no matter its complexity." I-2 AF, Tab 8, Part 18 at 3, 27; *see Shelly v. Department of the Treasury*, 75 M.S.P.R. 677, 684–85 (1997) (mitigating a removal to a demotion and finding that the appellant had rehabilitation potential based on, among other things, the appellant's testimony that she would not, in the future, engage in the misconduct charged by the agency). The deciding official recognized this when he testified in the first removal action that, in the appellant's response to the proposal notice, he "dedicated a couple of sentences in his response that said he would not edit documents again." I-2 AF, Tab 8, Part 5 at 13. The appellant offered the agency an apology for "having failed to understand that having corrected some letters helping citizens could offend the agency reputation nationwide." *Id*., Part 18 at 27. The fact that the appellant may have vigorously contested the agency's charges in his response to the proposal and on appeal to the Board does not indicate a lack of remorse. *See Smith v. Department of the Navy*, 62 M.S.P.R. 616, 621 (1994) (finding it inappropriate to consider an appellant's lack of remorse for the misconduct when that lack of remorse is a consequence of the denial of misconduct).

¶48    Accordingly, based on all of the above circumstances, including the appellant's 24 years of service with no prior discipline, the fact that not all of the charges and specifications have been sustained, and the fact that the most serious charge has not been sustained, we agree with the administrative judge's determination that the maximum reasonable penalty in this case is a 30-day suspension. *Cf. Barcia v. Department of the Army*, 47 M.S.P.R. 423, 425-26, 430-31 (1991) (mitigating a 60-day suspension of a supervisor to a 30-day suspension, based on a charge of Use of Government Property—a telephone and a computer—for Other than Official Purposes, when the more serious charge of

Intentionally Dishonest Conduct was not sustained and the appellant had "length[y] . . . service" and no prior disciplinary actions).

## ORDER

¶49    We ORDER the agency to cancel the appellant's removal, substitute in its place a 30-day suspension, and restore the appellant effective February 8, 2013. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶50    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶51    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶52    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶53 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color,

religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims:  Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or by any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B)  (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below: http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.



| | |
|---|---|
| **DFAS CHECKLIST** | |
| **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** | |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc., with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

    a. Outside earnings with copies of W2's or statement from employer.
    b. Statement that employee was ready, willing and able to work during the period.
    c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

  a.  Employee name and social security number.
  b.  Detailed explanation of request.
  c.  Valid agency accounting.
  d.  Authorized signature (Table 63)
  e.  If interest is to be included.
  f.  Check mailing address.
  g.  Indicate if case is prior to conversion.  Computations must be attached.
  h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

  a.  Must provide same data as in 2, a-g above.
  b.  Prior to conversion computation must be provided.
  c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.